```
                              DURAY MANDALAWI, A29-71-0639
                              SUFFOLK COUNTY HOUSE OF CORRECTION,
                              20 BRADSTON STREET,
                              BOSTON, MA, 02118

                              JUNE 17th, 2005
HEADQUARTERS POST-ORDER-UNIT,
801 I STREET, NW, - SUITE 800      05-11763 RWZ
WASHINGTON, DC, 20536
```

RE: 8 C.F.R. § 241.13(d) [ CUSTODY REVIEW]

This is my formal request for custody review determination. I believe that I have been held in custody beyond the presumptively reasonable time, whereas the statute explictly contemplates release of an alien upon the expiration of the removal period in 8 U.S.C § 1231(a)(3); 8 C.F.R § 241.5 (2004) wherein it provides conditions of supervision upon release.

If I am not going to be released and or deported in a reasonably foreseeable future, I want ICE to give me cogent reasons and specific facts as to why my 90-Day removal period is being tolled. I have cooperated fully with Ms. Claudia English and moreover, I am neither a flight risk nor a menace to society.

In Zadvydas v. Davis, the court read § 1231 to authorize continued detention of an alien following the 90-Day removal period for only such times as is reasonably necessary to secure the alien's removal, but Zadvydas is completely different from my case in several aspects:

1. The continued detention here doesn't serve it's purported purpose.
2. My removal to IRAQ has been and still is practically un-attainable.
3. Previous reasons offered by the Service in order to continue my detention has been hooey at best, and it's indeed the reason why ICE hasn't been able to effectuate my removal.
4. I have exhausted all my administrative remedies and my removal to IRAQ is not foreseeable in the near future, and hence efforts by congressman McGovern to have me taken to IRAQ by a U.S millitary plane has been unavailing.
5. United Arab Emirates has decline to give me a tourist visa and so xxxx has been Turkey and Jordan .
6. Since no cemmercial airline is currently permitted to fly over or to IRAQ my removal is not foreseeable in the nearby future.
7. I have been under ICE's custody since June 5th, 2004 awaiting deportation which hasn't been forthcoming.
8. I'm languishing behind bars while ICE very well knows that they cannot be able to remove me to IRAQ.

Respectfully Submitted,

*Duray Mandalawi*

DURAY MANDALAWI A29-71-0639

[PERSONAL] AFFIDAVIT IN SUPPORT OF WRIT OF HABEAS CORPUS.

Petitioner, Duray Mandalawi, was born in IRAQ on January 21st, 1965. He emigrated to U.S.A with an F-1 Visa on August 29th, 1987, to attend Clark University in Worcester, Massachusetts. While still in college, IRAQ invaded kuwait and as a conscrpted member of Kudish National Congress ("KNC") based in Washington DC, Petitioner was supposed to return back to IRAQ to fight for his country; an invasion that petitioner despised and publicly criticized. As a defector, IRAQI embassy severed Petitioner's financial aide to further his education and for the same reason he also lost his scolarship which had been granted by the Government of IRAQ.

On August 15th, 1991, Petitioner applied for and was subsequently granted political asylum. Armed with permanent residence, Petitioner resumed schooling to better his life. IN the course of several years, Petitioner worked for various indurstries, got married (07/04/1994) and had a child to consummate his marriage on February 1st, 1995. While these was going on Petitioner was diagnosed with Post-trauma depression syndrome (PTSD), bipolar, anhedonis, chronic depression ... etc. To cure the emotional pain and un-relenting psyche, Petitioner started abusing drugs and alcohol. He became more interested in hanging out with his peers than caring for his family, and before he realized he was divorced, homeless and with nowhere to go.

Drugs and alcohol addiction also made the Petitioner a frequent guest of the criminal justice system. Among other things, Petitioner has been convicted of crimes ranging from Impersonating a police officer, disorderly conduct, indicent assualt and battery, driving while intoxicated, criminal mischief, possession of class D substance with intent, violation of prevention abuse ... etc.

Because Petitioner's life had taken a turn for the worse, he enrolled [voluntary] in mental health counselling and substance abuse program with Dr. Douglas Tailor at 87 Russel Street in Worcester, MA to rehabilitate himself. As things had just began to progress; Petitioner's mental status was improving, he had been sobber for nine months, held a full time job as a sales coordinator for Lexi Cooporation ... etc INS caught up with Petitioner's derelictions. They used a trickster and asked Petitioner (through the mail) to come to JFK Federal building in Boston to pick up his LPR I-130. When petitioner went there on June 19th, 2001, he was arrested by INS officials and taken into their custody.

Deportation proceedings commenced and on October 1st, 2001 Petitioner was granted withholding of removal under convention against torture ("CAT") and was ordered deported to Slovakia. INS released him from their custody on January 23rd, 2002 when Slovakia refused to accept the Petitioner under an order of supervision wher he was supposed to report at JFK Building on 17th Floor on every first business day of the month. Petitioner obliged and never missed a day on when he was suppposed to report.

After being released from INS custody, Petitioners relapsed mental health relapsed because he didn't have health insurance to cover his treatment and the cost of the psychotic drugs that he required. Petitioner went without medication for a period of time and that is when he started experiencing PTSD symptoms: helplessness, hoplessness, day dreams so vivid that Petitioner thought that he was being tortured [flashbacks], thoughts that in some way resembled trauma, insomnia, problems falling asleep and or maintaining sleep, frequent frightening nightmares, emotional numbness, paranoia, suicidal ideations ... etc. He voluntari checked in Umass Medical hospital psych ward for treatment where he was admitted, treated & released two weeks later. Petitioner checked in again in Cambridge Hospital TReatment Center on May 2002. While in there he made comments that he wished something would happen to both him and his daughter so that they would both die. He also told his doctor that his thoughts we telling him to strap explosives and blow himself up in front of IRAQI's embassy front office. Petitioner's doctor took this as a threat and related the information to INS. INS lodged a detainer and subsequently transferred the Petitioner to Bristol County House of correction on June 5th, 2002.

Petitioner has been under INS' custody ever since without recourse. INS never gave him any reason whatsover why his 90-Day removal period has been tolled. After INS tried and re-tried to remove Petitioner to Slovakia, efforts that turned out to be futile, Petitioner with dreww his convention again against torture on December 5th, 2004 to make it easier for the Service because being a citizen and a national of IRAQ, IRAQI government will be more than willing to accept him. Immigration judge accepted Petitioner's request to be deported to IRAQ on 12/05/2004. Since that time INS as well as the Petitioner have both tried in vain to obtain VIZA's to United Arab Emirates, Slovakia and transit visa to TURKEY or JORDAN.

On May 5th, 2005 ICE's officer Efrain Perez told petitioner that INS was successful in obtaining transit visa for 50 other iraqi's before the Petitioner. He told Petitioner that the reason he hadn't been deported on time was because "no commercial airlines were being allowed to go to IRAQ or fly over iraqi's airspace." But through Turkey or Jordan that's the route INS is now using to deport people to IRAQ.

Petitioner's attorney, Omar H. Ali, contacted congressman McGovern's office to try and have petitioner sent to iraq on a United States military plane. That route also has been unavailing.

Petitioner has done everything possible to expedite his removal and for the reasons stated abov he would appreciate being released on supervision until there is a resolution to his case. Him and his entire family at large has languished greatly due to Petitioner's extended incarceration.

Signed under the pains and penalties of perjury.