UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS


DURAY MANDALAWI,                    )
                                    )
             Petitioner             )
                                    )        Civil Action No.
        v.                          )        05cv11763-RWZ
                                    )
ALBERTO GONZALES, ET AL.            )
                                    )
        Respondents[1]              )


RETURN AND MEMORANDUM IN SUPPORT OF MOTION TO DISMISS


SUMMARY CASE STATEMENT

     Petitioner is a native and citizen of Iraq presently

detained by the Bureau of Immigration and Customs Enforcement of

the Department of Homeland Security ("ICE") pending execution of

his final order of removal.[2]  His petition to this Court asserts

---

[1] The responsive official of the Department of Homeland Security
responsible for enforcement of petitioner's removal order in the
instant action is Bruce Chadbourne, Field Office Director for
Detention and Removal, Department of Homeland Security, Bureau of
Immigration and Customs Enforcement ("ICE") in Boston,
Massachusetts. See 28 U.S.C. § 517 (providing for the appearance
of the Department of Justice "to attend to the interests of the
United States in a suit pending in a court of the United
States").

[2] Petitioner was admitted to the United States as a student in
August 1987, and on May 10, 2000, was convicted in Worcester
District Court, Worcester, Massachusetts, for Indecent Assault
and Battery On a Person Over 14 Years Old (reportedly a
wheelchair-bound blind man with cerebral palsy, according to the
Middlesex District Attorney's Office). Petitioner himself
partially recounts his list of convictions as "ranging from
Impersonating a police officer, disorderly conduct, ind[e]cent
ass[]ault and battery, driving while intoxicated, criminal
mischief, possession of [C]lass D substance, violation of
prevention abuse [sic] . . . etc.". Attachment to Petition

unlawfully prolonged post-order detention in contravention of the
Supreme Court's rule in Zadvydas v. Davis, 121 S. Ct. 2491
(2001), due to the fact that he has been detained and desiring
removal to Iraq since December 6, 2004.

However, because travel documents have been issued by the
Government of Iraq for petitioner's removal, petitioner's removal
to Iraq is reasonably foreseeable as soon as security and
coordination with Iraqi authorities in Baghdad, and coordination
and notification arrangements with the U.S. Embassies in Amman,
Jordan and in Baghdad are completed. See Attachment A,
Declaration of Deportation Officer Pablo E. Campos, ¶¶ 6, 7.  It
is predicted based on past experience that petitioner's removal
by special charter flight will be effected within four to five
weeks of receipt of these authorizations, and that petitioner is
scheduled to be part of the initial group of Iraqi deportees to
be removed.  Id., ¶ 7.

Moreover, petitioner's removal appears viable because
approximately 42 Iraq nationals have been removed to Iraq since
2003, including a number removed in 2005.  Id., ¶ 4.

_____

denominated "Personal Affidavit in Support of Writ of Habeas
Corpus" ("Personal Affidavit"), p.1. Petitioner was for a time
committed to a mental facility where he is reported to have
threatened to strap himself with explosives and blow himself up
in front of the Iraqi Embassy, and is reported to have said also
that he wanted his daughter to die with him. Id., p. 3.
    Petitioner was initially granted withholding of removal to
Iraq, but petitioner then moved the Immigration Court to withdraw

Because petitioner's removal is now "reasonably foreseeable" as required by the Supreme Court, petitioner fails to state a claim upon which relief may be granted.  <u>Zadvydas v. Davis, et al.</u>, 121 S. Ct. at 2505.

**ARGUMENT**

I.   BECAUSE PETITIONER'S REMOVAL IS REASONABLY FORESEEABLE, THE PETITION FAILS TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED.

Petitioner raises no challenge to his removal order, but instead complains about the length of his detention awaiting the completion of necessary arrangements for removal. Petitioner incorrectly asserts that he has been held in respondent's custody "for over three years."  Petition for Writ of Habeas Corpus, p.1, ¶ 2.  In fact, however, petitioner's present custody by respondent dates only from June 29, 2004.  Moreover, petitioner's desired removal to Iraq became viable only as of December 6, 2004, when the Immigration Judge granted petitioner's request to vacate the order withholding removal to Iraq. Personal Affidavit, p.3.

The Supreme Court in <u>Zadvydas v. Davis</u>, 121 S. Ct. 2491 (2001) recognized six months as a presumptively reasonable period of detention within which to allow the government to accomplish an alien's removal, and said that, "for the sake of uniform administration in the federal courts, we recognize that period".

_____

that order so that he *could* be removed to Iraq.  The operative

<u>Id</u>. at 2505.  The Court further held:

> After this 6-month period, <u>once the alien provides good</u>
> <u>reason to believe that there is no significant</u>
> <u>likelihood of removal in the reasonably foreseeable</u>
> <u>future</u>, the Government must respond with evidence
> sufficient to rebut that showing. And for detention to
> remain reasonable, as the period of prior post-removal
> confinement grows, what counts as the "reasonably
> foreseeable future" conversely would have to shrink.
> This 6-month presumption, of course, does not mean that
> every alien not removed must be released after six
> months.  <u>To the contrary, an alien may be held in</u>
> <u>confinement until it has been determined that there is</u>
> <u>no significant likelihood of removal in the reasonably</u>
> <u>foreseeable future</u>.

<u>Zadvydas v. Davis, et al.</u>, 121 S. Ct. at 2505 (emphasis added).

In <u>Akinwale v. Ashcroft, et al.</u>, 287 F.3d 1050 (11th Cir.
2002), the Eleventh Circuit held that six months post-final order
detention must have elapsed before the filing of a habeas
petition, and that, "in order to state a claim under <u>Zadvydas</u> the
alien not only must show post-removal order detention in excess
of six months but also <u>must provide evidence of a good reason to</u>
<u>believe that there is no significant likelihood of removal in the</u>
<u>reasonably foreseeable future</u>." <u>Id</u>. at 1052 (emphasis added).

In <u>Lema v. USINS</u>, 214 F.Supp.2d 1116, 1118 (W.D. Wash.
2002), <u>aff'd</u> 341 F.3d 853 (9th Cir. 2003), even where post-order
detention had <u>exceeded</u> six months, the district court explained
that:

> The mere fact that six months has passed since
> petitioner was taken into INS custody does not satisfy
> his burden.  While an alien's detention will no longer

final removal order was issued on December 6, 2004.

be presumed to be reasonable after six months, there is
nothing in <u>Zadvydas</u> which suggests that the Court must
or even should assume that any detention exceeding that
length of time is unreasonable.  Rather, the passage of
time is simply the first step in the analysis.
Petitioner must then provide "good reason to believe
that there is no significant likelihood of removal in
the reasonably foreseeable future."

In the instant case, petitioner has been detained by
respondent pending removal to Iraq since December 6, 2004, longer
than the 6-month presumption.  As the Supreme Court has held,
however, "[t]his 6-month presumption, of course, does not mean
that every alien not removed must be released after six months.
To the contrary, an alien may be held in confinement until it has
been determined that there is no significant likelihood of
removal in the reasonably foreseeable future." <u>Zadvydas v. Davis,
et al.</u>, 121 S. Ct. at 2505.

Based upon the Declaration of Deportation Officer Pablo E.
Campos, Attachment A, there is no basis to determine that there
is *no* significant likelihood of removal in the reasonably
foreseeable future.  Since 2003 and now into 2005 Iraqi nationals
have been removed to Iraq, and Officer Campos has asserted that
he met on July 6, 2005, with Iraqi Embassy officials and U.S.
State Department officials, with the result that the Iraqi
officials agreed that the U.S. Department of Homeland Security
could now begin to make arrangements for the repatriation of
Iraqi deportees. Attachment A, Declaration of Deportation Officer
Pablo E. Campos, ¶ 5.  Officer Campos asserts further that past

5

experience suggest that petitioner's removal can be effected within four to five weeks of completion of security arrangements and receipt of necessary authorizations.  <u>Id.</u>, ¶ 7.

Accordingly, because it cannot be determined that there is no likelihood of petitioner's removal in the reasonably foreseeable future, the case should be dismissed for failure to state a claim upon which relief may be granted.

<div align="center">

**CONCLUSION**

</div>

For all the reasons set out above, the petition should be dismissed and all other relief denied.

<div style="margin-left:40%">

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  <u>s/Frank Crowley</u>
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114
(617) 565-2415

</div>

<div align="center">

6

</div>

CERTIFICATE OF SERVICE

I hereby certify that I caused true copy of the above document to
be served upon pro se petitioner by mail on September 16, 2005.

s/Frank Crowley
FRANK CROWLEY
Special Assistant U.S. Attorney
Department of Homeland Security
P.O. Box 8728
J.F.K. Station
Boston, MA 02114

ATTACHMENT A

DECLARATION OF PABLO E. CAMPOS

I, Pablo E. Campos, state and declare as follows:

1.  I am a Detention and Deportation Officer assigned to the Department of
    Homeland Security, Immigration and Customs Enforcement, Detention and
    Removals Office, Office of Field Operations, Travel Document Unit, in
    Washington, D.C. I have been an officer with Legacy-Immigration and
    Naturalization Service and presently with the Bureau of Immigration and Customs
    Enforcement since 1987.

2.  My present duties include development of policy and regulations relating to the
    enforcement of final orders of deportation and the detention and removal of aliens
    from the United States. Amongst those duties I conduct necessary liaison with
    foreign embassy representatives for the obtainment of suitable travel documents
    for the removal of aliens with Final Orders of Removal. As part of these duties I
    have been assigned as my area of responsibility the countries in the Middle East
    and the African continent.

3.  In my current position, I am personally familiar with inter- and intra-
    governmental procedures for the repatriation of persons who are Iraqi nationals.

4.  In fiscal year 2003 and fiscal year 2004 there were 37 Iraqi nationals removed to
    Iraq under Final Orders of Removal. In the period between October 2004 and
    June 2005, approximately 5 Iraqi nationals have been removed to Iraq.

5.  On July 6, 2005 I met with Iraqi Embassy officials in Washington, D.C.,
    accompanied by the Department of State Desk Officer and the ICE/DRO Liaison
    Officer for the Department of State, to discuss the repatriation of Iraqi nationals to
    Iraq. On that date, Iraq embassy officials agreed that ICE/DRO could commence
    making travel document requests for Iraqi nationals with Final Orders of Removal
    and that ICE/DRO could also commence making repatriation arrangements for
    those Iraqi nationals in possession of valid Iraqi passports or valid Iraqi travel
    documents.

6.  ICE/DRO is in the process of obtaining authorization from the U.S. embassy in
    Baghdad to initiate these returns. Said authorization is expected once security and
    coordination issues with the Iraqi authorities in Baghdad have been discussed and
    resolved.

7.  Upon confirmation of authorization from the U.S. embassy in Baghdad, I have
    received authorization to remove the subject deportees from the United States via
    chartered flight to Amman, Jordan and then to repatriate them through available
    commercial flights from Amman, Jordan to Baghdad, Iraq. This is to commence
    upon completion of all necessary coordination and notification arrangements with
    the U.S. embassies in Amman, Jordan and Baghdad, Iraq. Past experience
    suggests this contract charter removal process can be completed within four to
    five weeks of receipt of all pertinent authorizations.

8. In my official experience in dealing with the government of Iraq, through its officials at their embassy in Washington, D.C., I can attest that Iraqi removals will begin upon completion of the arrangements noted above. Duray Mandalawi, A29 710 639, is scheduled to be part of any initial group of Iraqi deportees removed from the United States upon completion of such arrangements.

I declare under penalty of perjury, that the foregoing is true and correct t the best of my knowledge. Executed in Washington, D.C. on the 7th day of September 2005.

Pablo E. Campos
Office of Detention and Removal Operations
U.S. Immigration and Customs Enforcement
Department of Homeland Security